UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>ALEX OLIN JOHNSON,<br><br>            Defendant. | 4:20-CR-40109-01-KES<br><br>ORDER ADOPTING REPORT<br>AND RECOMMENDATION AS<br>MODIFIED AND DENYING IN PART<br>AND GRANTING IN PART MOTION TO<br>SUPPRESS |

Defendant, Alex Olin Johnson, is charged with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 1. Johnson filed a motion to suppress (1) all evidence seized as a result of a vehicle search conducted on November 7, 2019; (2) all statements made by Johnson to Detective Dan Christiansen following Johnson's arrest; and (3) all evidence seized during the search of Johnson's apartment. Docket 20. Johnson alleges that (1) law enforcement illegally prolonged the traffic stop leading to the vehicle search in violation of the Fourth Amendment and Supreme Court precedent; (2) Detective Christiansen failed to advise Johnson of his *Miranda* rights following his arrest and before his interrogation; and (3) the application for the search warrant for Johnson's apartment was based on unlawfully seized evidence from the November 7, 2019 traffic stop, and that all evidence seized at the apartment is fruit of the poisonous tree. *Id.* The United States resists Johnson's motion to suppress. Docket 26. The court referred Johnson's motion

to Magistrate Judge Veronica Duffy under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Duffy recommended defendant's motion to suppress be denied in part and granted in part. Dockets 27, 39. Johnson filed objections to the Report and Recommendation. Docket 43. After a de novo review of the Report and Recommendation and a review of the record, the court adopts the Report and Recommendation as modified below and denies in part and grants in part Johnson's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); see also United States v. Raddatz, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also United States v. Craft, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

A full recitation of the facts can be found in the Report and Recommendation (Docket 39). The court has conducted a de novo review of the

evidence[1] and incorporates herein the facts as set forth in Magistrate Judge Duffy's Report and Recommendation.

### DISCUSSION

Johnson raises three objections[2] to Magistrate Judge Duffy's Report and Recommendation related to his rights under the Fourth Amendment and the Fifth Amendment. Docket 43. The court will address each objection in turn.

### I.     The Traffic Stop Was Not Unlawfully Prolonged.

Johnson objects to Magistrate Judge Duffy's finding that the traffic stop was not unlawfully prolonged. Docket 43 at 2-10. Specifically, Johnson argues that Magistrate Judge Duffy erred when she relied on *United States v. Soderman*, 983 F.3d 369 (8th Cir. 2020), because it addressed issues not briefed by the parties or argued at the evidentiary hearing. *Id.* at 2-3. Alternatively, Johnson argues that *Soderman* is distinguishable. *Id.* at 3-10.

The Fourth Amendment protects against unreasonable searches and seizures by the government. U.S. Const. amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008). "A seizure for a traffic violation justifies a police

---

[1] An evidentiary hearing was held on March 1, 2021. *See* Dockets 27, 30.

[2] Neither Johnson nor the government object to Magistrate Judge Duffy's finding that Johnson's statements to Detective Christensen regarding the source of the methamphetamine violated *Miranda* and should be suppressed. Docket 42 at 1; *see also* Docket 26 at 17; Docket 44. This court adopts Magistrate Judge Duffy's reasoning and conclusion on this issue and grants Johnson's motion to suppress Johnson's statements to Detective Christensen regarding the source of the methamphetamine.

investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). A routine traffic stop, then, is similar to a *Terry* stop, rather than a formal arrest.[3] *Id.* Here, Johnson does not contest that Officer Stevens had probable cause to initiate the traffic stop for a window tint violation of South Dakota law. *See* Docket 21 at 10 (arguing only that the scope of the traffic stop was unreasonable, not the decision to initiate the stop); Docket 39 at 37 (noting that Johnson does not dispute that the initial traffic stop was justified).

"Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and to attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citations omitted). An officer's mission during a traffic stop also includes "ordinary inquiries incident to [the traffic] stop." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Generally, those inquiries "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355. Those ordinary inquiries, like enforcement of the traffic code, serve to ensure that

---

[3] In its brief in opposition to Johnson's motion to suppress and at the evidentiary hearing, the government argued that Officer Stevens had probable cause to believe the vehicle contained contraband. Docket 26 at 9-10; *see also* Docket 30 at 127-129. Thus, the government contended that the traffic stop need not be analyzed under a *Rodriguez* analysis. Magistrate Judge Duffy rejected the government's argument, finding that officers had neither reasonable suspicion nor probable cause to believe there was contraband in the vehicle at the time the vehicle was stopped. Docket 39 at 35-36. This court adopts Magistrate Judge Duffy's conclusion on this issue. Thus, the traffic stop will be scrutinized under *Rodriguez*.

4

vehicles on the road operate safely and responsibly. *Id.* Thus, a traffic stop may only last as long as necessary to achieve that mission. *Id.* at 355-56. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. *Id.* at 354; *see also Caballes*, 543 U.S. at 407 ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

Absent at least reasonable suspicion, officers "may not conduct unrelated checks that extend the stop beyond the time reasonably required to complete its original mission." *Soderman*, 983 F.3d at 374. A dog sniff is not an ordinary inquiry incident to a traffic stop. *Rodriguez*, 575 U.S. at 355-56. A dog sniff serves to "detect[] evidence of ordinary criminal wrongdoing[,]" and does not serve to ensure that vehicles operate safely and responsibly on the roadways. *Id.* (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40-41 (2000)). Thus, the critical question here is whether Officer Westrum and K-9 Robi's dog sniff prolonged the traffic stop by adding time to the stop. *Id.* at 357. If the dog sniff occurred *before* the time that the tasks tied to the stop were—or reasonably should have been—completed, then the dog sniff did not prolong the stop. If, on the other hand, Officer Westrum and K-9 Robi's dog sniff occurred *after* the time that the tasks tied to the stop were—or reasonably should have been—completed, then the dog sniff prolonged the traffic stop and must be supported by either reasonable suspicion or probable cause. *See Soderman*, 983 F.3d at 374.

5

Here, Officer Stevens stopped Johnson on suspicion of illegally tinted windows. Docket 39 at 6. Thus, the initial inquiry is whether Officer Westrum and K-9 Robi's dog sniff of the Pontiac occurred before or after the time that the tasks tied to investigating the window tint violation were—or reasonably should have been—completed. The court will recreate the relevant timeline from Magistrate Judge Duffy's unopposed statement of the facts:

**0:00:50-0:00:55**: Officer Stevens asks Johnson, the sole occupant in the vehicle, for his license, registration, and proof of insurance. *Id.* at 7.

**0:01:05**: Johnson tells Officer Stevens that his license has been suspended. *Id.*

**0:01:12**: Johnson provides Officer Stevens with his identification card. *Id.*

**0:02:01**: Johnson tells Officer Stevens that the vehicle belongs to his brother, Austin Johnson. *Id.*

**0:02:12-0:02:34**: Johnson provides Officer Stevens the vehicle's registration and proof of insurance. *Id.*

**0:02:52**: Officer Stevens and Johnson walk to Officer Stevens's patrol car. Officer Stevens radios dispatch to request assistance from a traffic unit officer with a working window tint meter. *Id.* at 8.

**0:04:55-0:05:02**: Officer Stevens speaks with a traffic unit officer over the radio and explains that his window tint meter died.[4] *Id.*

**0:05:33-0:06:02**: Officer Stevens learns that Johnson's driver's license is eligible to be reinstated. Officer Stevens informs Johnson that he will give Johnson a citation for driving without a license. *Id.*

**0:11:39-0:12:40**: Officer Stevens explains to Johnson that he will receive a warning for the window tint violation, but that Officer Stevens needed an accurate reading for his police report. *Id.* at 9.

**0:12:45**: Officer Stevens informs Johnson that Officer Stevens is also doing roadside drug interdiction. Officer Stevens asks for consent to search the vehicle. Johnson consents to Officer Stevens searching the passenger compartment of the vehicle but not the trunk. *Id.*

**0:13:49**: Sioux Falls Police Department Traffic Unit Officer Gillespie arrives on scene and is greeted by Officer Stevens. *Id.*

**0:14:42**: Officer Gillespie takes a reading of 24% from the front driver's side window and relays that information to Officer Stevens. *Id.* at 10.

**0:14:47-0:14:50**: While walking back to his patrol car, Officer Stevens quietly radios for a K-9 unit to assist. *Id.*

**0:15:31-0:16:00**: Officer Stevens takes down the window tint meter's serial number and engages in small talk with Officer Gillespie. *Id.*

---

[4] Officer Stevens testified at the evidentiary hearing that requesting a traffic unit to measure the window tint is a routine part of this kind of traffic stop. Docket 30 at 59-60.

**0:17:27-0:17:32**: Officer Gillespie departs after Officer Stevens informs him that all he needed was the tint reading. *Id.* at 11.

**0:17:46-0:18:15**: Officer Stevens prints Johnson's citation for driving without a license.[5] *Id.*

**0:18:17-0:18:57**: Johnson asks Officer Stevens if he should expect to leave the Pontiac there. Officer Stevens explains that Johnson should call someone to drive it away because Johnson could not drive it away without a valid driver's license, and that Officer Stevens would let Johnson go with the expectation that he would get his license reinstated. *Id.*

**0:18:39**: While talking to Johnson, Officer Stevens places the printed driver's license citation on the dashboard without reviewing it with Johnson. *Id.*

**0:19:36-0:20:10**: Johnson and Officer Stevens engage in small talk.[6] *Id.*

**0:21:15-0:21:44**: Sioux Falls Police Department Officer Westrum arrives on scene and proceeds to greet Officer Stevens. *Id.* at 12.

**0:24:08**: Officer Stevens tells Johnson that he would print a warning ticket for the illegal window tint to give to his brother. *Id.* at 14.

**0:24:25**: Officer Stevens begins printing the window tint warning. Officer Westrum and K-9 Robi begin their sniff of the Pontiac. *Id.*

---

[5] Officer Stevens testified that it would normally take him five or six minutes to issue a citation or warning. Docket 30 at 99.
[6] Officer Stevens testified that he was waiting for the K-9 officer to arrive during his conversation with Johnson. Docket 30 at 83.

**0:25:14**: On the third pass of the Pontiac, K-9 Robi alerts to the smell of contraband near the rear passenger side wheel. *Id.*

**0:25:43-0:26:17**: Officer Stevens hands Johnson copies of the citation for driving without a license and the warning for illegally tinted windows. Officer Stevens reviews them with Johnson. *Id.*

**0:28:10-0:28:27**: Johnson completes the citation for driving without a license by signing it. *Id.* at 15.

**0:28:29-0:28:45**: Officer Stevens gives Johnson copies of the citation and warning, along with his identification card, proof of insurance, and registration. *Id.* at 16.

Here, had Officer Stevens exercised diligence, he should have completed all tasks tied to investigating the window tint violation before Officer Westrum and K-9 Robi's dog sniff of the Pontiac. Officer Stevens had already completed and printed the citation for driving without a license at the 0:18:15 mark of the stop but did not go over the citation with Johnson. Officer Stevens received the window tint reading from Officer Gillespie at the 0:14:42 mark and had all the information he needed to write up and print the warning ticket. Officer Stevens testified it usually takes him five to six minutes to write a citation or a warning. If Officer Stevens had diligently prepared the warning for the tint violation, he would have completed it at approximately the 0:20:42 mark. Officer Westrum did not arrive on scene until the 0:21:15 mark and did not begin the dog sniff with K-9 Robi until the 0:24:25 mark. Officer Stevens finally completed all tasks associated with the window tint investigation at the 0:28:45 mark when

9

he returned Johnson's identification card, registration, and proof of insurance.
Officer Stevens's actions were clearly meant to prolong the stop in order for
Officer Westrum and K-9 Robi to arrive on scene to sniff the Pontiac, and
Officer Stevens even testified that he engaged Johnson in small talk instead of
reviewing the citation and warning in order to stall for time for Officer Westrum
and K-9 Robi to arrive. Had investigation of the tint violation been the only
mission of the stop, then the stop would have been unlawfully prolonged.

But, as Magistrate Judge Duffy noted, additional complications arose
during the stop that expanded its scope. "When complications arise 'in carrying
out the traffic-related purposes of the stop, . . . police may reasonably detain a
driver for a longer duration than when a stop is strictly routine.' " *Soderman*,
983 F.3d at 374 (alterations in original) (quoting *United States v. Olivera-
Mendez*, 484 F.3d 505, 510 (8th Cir. 2007)). Here, Magistrate Judge Duffy
concluded that Officer Stevens's discovery that Johnson was driving on a
suspended license justifiably extended the scope of the traffic stop because
Johnson was legally incapable of removing the Pontiac from the scene and
needed either a licensed driver or a tow truck to remove the vehicle. Docket 39
at 40. Magistrate Judge Duffy relied on *Soderman* to conclude that the stop
was not unlawfully prolonged because Officer Westrum and K-9 Robi
conducted the dog sniff well before Johnson's grandfather arrived to pick up
Johnson's dog. *Id.* at 43-44. Magistrate Judge Duffy measured Johnson's
grandfather's arrival on scene as the extent of time reasonably required for

someone to pick up the Pontiac, thus completing all tasks associated with the traffic stop. *Id.*

Johnson objects to Magistrate Judge Duffy's conclusion that the traffic stop was not unlawfully prolonged on two grounds. First, Johnson argues that *Soderman* cannot serve as the rationale for that conclusion because the parties did not brief or argue the issue of whether the traffic stop could be lawfully prolonged on the basis of Johnson's driver's license status. Docket 43 at 3. Johnson relies on the Supreme Court's recent decision in *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020), in support of that objection. *Id.* at 2-3. Second, Johnson argues that even if this court can properly address the issue, *Soderman* is materially distinguishable. *Id.* at 3.

First, Johnson's reliance on *Sineneng-Smith* is misplaced. In that case, defendant was convicted of violations of 8 U.S.C. § 1324, which makes it a federal felony to "encourag[e] or induc[e] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." 8 U.S.C. § 1324 (a)(1)(A)(iv). Defendant operated an immigration consulting firm where she assisted clients, who worked without authorization in the United States, in applying for labor certification. *Sineneng-Smith*, 140 S. Ct. at 1577-78. Defendant, however, knew that her clients could not qualify for the labor-certification dispensation. *Id.* Nevertheless, she charged her clients to file the labor certification applications, collecting over $3 million. *Id.* at 1578. In the District Court, defendant argued unsuccessfully that 8 U.S.C. § 1324 did not

11

cover her conduct, and, if it did, it violated the First Amendment's Petition and Free Speech Clauses. *Id.* She renewed those same arguments before the Ninth Circuit both in her brief and at oral argument. *Id.* After oral argument, the Ninth Circuit panel ordered supplemental *amicus* briefing to analyze whether § 1324 was overbroad under the First Amendment. *Id.* at 1580-81. Defendant never challenged the statute as overbroad prior to *amicus* briefing. *Id.* at 1580. The panel then gave invited *amici* twenty minutes for oral argument on the overbreadth issue, while it allocated defendant's counsel only ten minutes. *Id.* at 1581. The Ninth Circuit held the statute facially overbroad under the First Amendment. *Id.*

The Supreme Court reversed the Ninth Circuit panel. It held that the Ninth Circuit "panel departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *Id.* at 1578. The Court reasoned that "[n]o extraordinary circumstances justified the panel's takeover of the appeal." *Id.* at 1581. The Court noted that "a court is not hidebound by the precise arguments of counsel, but the Ninth Circuit's radical transformation of [the] case goes well beyond the pale." *Id.* at 1581-82.

Unlike the Ninth Circuit panel in *Sineneng-Smith*, Magistrate Judge Duffy did not "radical[ly] transform [the] case . . . well beyond the pale." *Id.* True, the government did not argue that the traffic stop was lawfully prolonged by virtue of Johnson's suspended license, but the government did cite to *Soderman* multiple times in its brief in opposition to Johnson's motion to suppress. Docket 26 at 11, 15. Magistrate Judge Duffy's analysis of *Soderman* can hardly

12

be characterized as a radical transformation of the case. Unlike *Sinenening-Smith*, the *Soderman* analysis did not create a new constitutional issue for the court to rule on for the first time on appeal, but rather it expanded on the already-existing issue that was raised by Johnson of whether the traffic stop was unlawfully prolonged. Further, the Supreme Court was particularly concerned with the Ninth Circuit panel's reframing of the case because defendant "presented a contrary theory of the case in the District Court" and because the panel sought to invalidate the statute for First Amendment overbreadth, which is a tool that should be used sparingly. *Sineneng-Smith*, 140 S. Ct. at 1581. Like this court, Magistrate Judge Duffy is bound by Eighth Circuit precedent, and *Soderman* is squarely on point.

Second, Johnson argues that *Soderman* is materially distinguishable. In *Soderman*, a trooper pulled over defendant for driving seventeen miles per hour over the speed limit. *Soderman*, 983 F.3d at 372. During the records check, the trooper discovered that defendant's license was suspended. *Id.* at 372-73. Defendant called a tow truck to tow his vehicle because he was legally incapable of driving with a suspended license. *Id.* at 373. While waiting for the tow truck to arrive, a drug interdiction officer arrived on scene. *Id.* Based on defendant's unkempt appearance, erratic behavior on scene, the contents of his vehicle, a conversation with defendant, and a conversation with defendant's father, the drug interdiction officer determined that she had probable cause to believe there would be evidence of drug paraphernalia in defendant's car. *Id.* The troopers seized the vehicle and requested a second tow truck. *Id.*

13

Defendant was issued a ticket for speeding and a ticket for driving on a suspended license. *Id.* Seventy-five minutes after the stop began, defendant walked away from the scene before the second tow truck arrived. *Id.* The troopers then obtained a warrant to search the vehicle, searched the vehicle, and discovered drugs, drug paraphernalia, a firearm, and ammunition. *Id.* Defendant moved to suppress the evidence obtained from his vehicle, arguing the trooper unlawfully extended the stop to give the drug interdiction officer time to develop probable cause. *Id.* The District Court denied the motion to suppress. *Id.*

The Eighth Circuit affirmed the denial of defendant's motion to suppress. *Id.* at 372. It noted that "[w]hen complications arise 'in carrying out the traffic-related purposes of the stop, . . . police may reasonably detain a driver for a longer duration than when a stop is strictly routine.' " *Id.* at 374 (alteration in original) (quoting *Olivera-Mendez*, 484 F.3d at 510. The court reasoned that the trooper's discovery that defendant had a suspended driver's license "justifiably extended the lawful scope of the traffic stop because of [defendant's] legal inability to remove the vehicle from the scene and the consequential need for a licensed driver or tow truck to do so." *Id.* Thus, "the length of the stop was directly related to the community caretaking function of ensuring safe removal of the vehicle and not to unrelated questioning or to the awaiting of another officer's arrival." *Id.*

Here, Johnson's case is analogous to *Soderman*. Like the defendant in *Soderman*, Johnson was driving on a suspended license. Once Officer Stevens

14

discovered this, the scope of the stop was lawfully extended until either a licensed driver could pick up the vehicle or it could be towed in accordance with Officer Stevens's community caretaking function. Johnson argues that, unlike the trooper in *Soderman*, Officer Stevens did not act diligently in addressing what to do with Johnson's vehicle. Docket 43 at 5. Johnson bemoans the fact that Officer Stevens did not immediately tell Johnson that he would either need to have a licensed driver or a tow truck retrieve the vehicle upon finding out that Johnson's license was suspended. *Id.*

Johnson contends that, had Officer Stevens acted diligently and told him he would need to have a licensed driver retrieve the vehicle, Johnson would have promptly called someone much earlier in the traffic stop to get the vehicle, and because it took his grandfather approximately ten minutes to arrive to pick up his dog, it would have also taken him approximately ten minutes to arrive to pick up his vehicle. *Id.* at 6-7. Johnson's argument supposes that, had Officer Stevens acted diligently, he would have told Johnson at the six-minute mark that he needed a licensed driver or tow truck because that is when he confirmed that Johnson's license was suspended. *Id.* at 7. Thus, Johnson claims that either his grandfather or another licensed driver would have been on scene at approximately the sixteen-minute mark, well before Officer Westrum and K-9 Robi arrived.

While Johnson's argument is innovative, this court is unaware of any authority that requires an officer to alert an individual with a suspended license that he will need to have a licensed driver or tow truck come to the

15

scene. Instead, it should be obvious to a person driving with a suspended license that he will not be able to legally drive the vehicle after the traffic stop concludes. Further, while Johnson notes that he would have promptly called someone to pick up the vehicle had Officer Stevens notified him immediately, the facts do not support this assertion. When Johnson asked Officer Stevens whether he would need someone to pick up the vehicle around the nineteen-minute mark, Officer Stevens responded affirmatively because Johnson would not be able to drive on a suspended license. Notably, Johnson did not promptly call for a licensed driver to retrieve the vehicle. Thus, the court does not find that *Soderman* is distinguishable on these facts.

This court adopts Magistrate Judge Duffy's conclusion that the traffic stop was not unlawfully prolonged. Johnson's objection is overruled.

## II. Johnson's Statements Made to Detective Christensen Regarding The Smoking Utensil Are Admissible.[7]

Johnson objects to Magistrate Judge Duffy's conclusion that Detective Christensen's questions to Johnson and Johnson's responses regarding the smoking utensil should not be suppressed under *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, Johnson contests Magistrate Judge Duffy's finding that Detective Christensen's questions fall under the public safety exception to *Miranda*. Docket 43 at 10.

---

[7] Johnson does not object to Magistrate Judge Duffy's conclusion that the biographical questions do not fall under the definition of "interrogation" under *Miranda*. Docket 43 at 10 n.3. Thus, this court adopts Magistrate Judge Duffy's conclusion on that issue.

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. Under *Miranda*, "a person [must] be advised of their right to be free from compulsory self-incrimination and to assistance of counsel" prior to custodial interrogation. *United States v. Thompson*, 976 F.3d 815, 823 (8th Cir. 2020). "Statements made during custodial interrogation are generally suppressed if no *Miranda* warnings were provided." *Id.* at 823-24.

Here, Johnson was in custody when Detective Christensen questioned him about the smoking utensil because he had been placed under formal arrest. Docket 39 at 18, 46; *see also United States v. Griffin*, 922 F.2d 1343, 1347 ("[c]ustody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way.") (emphasis and citation omitted). There is also no dispute that Detective Christensen did not read Johnson his rights under *Miranda* prior to questioning him about the smoking utensil. Docket 26 at 16. Thus, the question before this court is whether Detective Christensen's questions to Johnson about the smoking utensil constituted "interrogation" under *Miranda*.[8] If so, Johnson's statements in response to Detective Christensen's questions must be suppressed.

---

[8] Magistrate Judge Duffy found that the government bears the burden of proving that Johnson's statements to Detective Christensen were not the subject of custodial interrogation. Docket 39 at 46. Because the government did not object to this conclusion, this court similarly places the burden of proof on the government.

17

"Interrogation occurs only when there is express police questioning or its 'functional equivalent,' which means 'words or actions on the part of police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *United States v. Bailey*, 831 F.3d 1035, 1038 (8th Cir. 2016) (alteration in original) (emphasis omitted) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). But the Supreme Court has held "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence . . . ." *New York v. Quarles*, 467 U.S. 649, 655 (1984); *United States v. Liddell*, 517 F.3d 1007, 1009 (8th Cir. 2008). The public safety exception applies to situations "in which police officers ask questions reasonably prompted by a concern for the public safety." *Quarles*, 467 U.S. at 656. The public safety exception relies on an objective standard, and does not inquire into the subjective motivations of the questioning officer. *Liddell*, 517 F.3d at 1009. Public safety "includes protection of the police officers themselves." *Id.* (citing *Quarles*, 467 U.S. at 658 n.7, 659). If questions by police officers to a suspect in custody were not prompted by an objective concern for public safety but were solely designed to elicit an incriminating response from the suspect, then the questions and statements in response must be suppressed. *See id.*

Here, Johnson objects to Magistrate Judge Duffy's finding that Detective Christensen's questions regarding the smoking utensil fall under the public safety exception to *Miranda*. Docket 43 at 10. Johnson points to the fact that Detective Christensen questioned Johnson after Detective Christensen

18

analyzed the smoking utensil and determined that it was likely a smoking utensil and not a one-pot methamphetamine cooking apparatus. *Id.* at 11. The record shows that Detective Christensen questioned Johnson about the smoking utensil after he analyzed the utensil and determined that he did not think it was a one-pot methamphetamine cooking apparatus. Detective Christensen also had advised Officer Westrum that a person could likely travel with it safely. But the Eighth Circuit has recognized "that the risk of police officers being injured by the mishandling of . . . drug paraphernalia provides a sufficient public safety basis to ask a suspect who has been arrested and secured whether there [is] . . . contraband in a car . . . that police are about to search." *Liddell*, 517 F.3d at 1009-10.

The reason that Detective Christensen arrived on scene was to determine whether the smoking utensil was an apparatus used in methamphetamine cooking. Docket 30 at 116-17. Further, Detective Christensen testified that the smoking utensil was something he had never seen before, that he asked Johnson what it was to make sure that it was not something that Johnson used to cook methamphetamine with, and that he wanted to ensure the other officers' safety while they continued to search the vehicle. *Id.* at 117, 123. The Eighth Circuit has recognized that manufacturing methamphetamine is an "inherently dangerous activity that creates substantial risks to public health and safety." *United States v. Ellefson*, 419 F.3d 859, 866 n.4 (8th Cir. 2005). Detective Christensen's questions about the smoking utensil "evidenced a justifiable concern about the dangers surrounding the manufacture of

19

methamphetamine[.]" *United States v. Noonan*, 745 F.3d 934, 938 (8th Cir. 2014) (emphasis omitted). Thus, Detective Christensen's questions about the smoking utensil were "reasonably prompted by a concern for the public safety." *Quarles*, 467 U.S. at 656.

Detective Christensen's questions to Johnson about the smoking utensil fall under the public safety exception to *Miranda*. Thus, Johnson's objection is overruled.

### III.   The Evidence Obtained from The Search of Johnson's Apartment Is Not Fruit of The Poisonous Tree.

Johnson objects to Magistrate Judge Duffy's conclusion that the evidence obtained during the search of Johnson's apartment is not fruit of the poisonous tree. Docket 43 at 12. Johnson argues that the traffic stop was unlawfully prolonged and the fruits of the search of the vehicle formed the basis for the search warrant. *Id.* Once the fruits of the vehicle search are excluded from the affidavit in support of the search warrant, Johnson argues there was no probable cause for the search warrant for his apartment. Docket 21 at 26-27. Further, Johnson contends that the good faith exception does not apply to the search warrant. *Id.* at 28-29.  But this court adopted Magistrate Judge Duffy's conclusion that the traffic stop was not unlawfully prolonged. As a result, this court adopts Magistrate Judge Duffy's reasoning and conclusion that the evidence seized from Johnson's apartment is not fruit of the poisonous tree. Thus, Johnson's objection is overruled.

## CONCLUSION

Officer Stevens did not unlawfully prolong the traffic stop. Officer Stevens's discovery that Johnson's driver's license was suspended justifiably extended the scope of the traffic stop. Officer Westrum and K-9 Robi's dog sniff occurred before the time that either a licensed driver or tow truck arrived to remove Johnson's vehicle. Next, Detective Christensen's questions to Johnson about the smoking utensil are admissible. Detective Christensen's questions were prompted by a concern for public safety because of the dangers inherent in the manufacture of methamphetamine. Finally, because Officer Stevens did not unlawfully prolong the traffic stop, the evidence seized from Johnson's apartment is not fruit of the poisonous tree. The court adopts Magistrate Judge Duffy's report and recommendation as modified and denies in part and grants in part Johnson's motion to suppress. Thus, it is

ORDERED that the report and recommendation (Docket 39) denying in part and granting in part Johnson's motion to suppress is adopted as modified by this opinion.

Dated April 29, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE